UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID A. WILLIAMS, JR., *derivatively on behalf of* OCEAN'S PROMISE, INC., | )<br>)<br>) |
| *Plaintiff*, | )<br>) |
| v. | ) No. 1:21-cv-00353-JMS-DLP<br>) |
| EBX ENTERPRISES, LLC and ELIJAH W. BLAND, | )<br>)<br>) |
| *Defendants*. | )<br>) |

**ORDER**

Plaintiff David Williams and Defendant EBX Enterprises, LLC ("EBX"), acting through its sole member Defendant Elijah Bland, formed Ocean's Promise, Inc. ("Ocean's Promise") to sell sea moss products. After the relationship between Mr. Williams and Mr. Bland soured, they decided to dissolve Ocean's Promise. Mr. Williams brings this action derivatively on behalf of Ocean's Promise, alleging claims against EBX and Mr. Williams for breach of fiduciary duty, self-dealing, and conversion, and seeking an accounting. [Filing No. 23.] EBX and Mr. Bland have filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of all of Mr. Williams' claims. [Filing No. 27.] That motion is now ripe for the Court's review.

**I.**
**STANDARD OF REVIEW**

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all

1

permissible inferences in favor of the plaintiff. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following are the factual allegations contained in the Amended Complaint, [Filing No. 23], which the Court must accept as true at this time.

In early August 2019, Mr. Williams started a business selling "sea moss gel" products under the brand name "Ocean's Promise" to health food stores. [Filing No. 23 at 3.] He hired Mr. Bland to assist with designing product labels and setting up various social media and retail platforms for the business. [Filing No. 23 at 3.]

On March 31, 2020, Mr. Williams and Mr. Bland formally incorporated Ocean's Promise with the Indiana Secretary of State's Office. [Filing No. 1-1 at 15; Filing No. 23 at 3.][1] Mr.

---

[1] The exhibits attached to Mr. Williams' original Complaint, [Filing No. 1-1], were not attached to his Amended Complaint, [*see* Filing No. 23]. This appears to have been an oversight, as the

Williams was the Chief Executive Officer ("CEO"), and Mr. Bland was the Chief Operating Officer ("COO"). [Filing No. 1-1 at 15.] The rights and responsibilities of the parties are governed by an amended shareholder agreement ("the Shareholder Agreement") executed on April 28, 2020 between Mr. Williams on one hand and EBX, acting through Mr. Bland, on the other. [Filing No. 1-1 at 18-30; Filing No. 23 at 4.] Pursuant to the Shareholder Agreement, Mr. Williams and EBX each own 500,000 shares of Ocean's Promise. [Filing No. 1-1 at 20.] The Shareholder Agreement also specified that both Mr. Williams and Mr. Bland were to serve as directors of Ocean's Promise. [Filing No. 1-1 at 21.]

Ocean's Promise registered in its name the trademark "OCEAN'S PROMISE" ("the Trademark") with the United States Patent and Trademark Office ("USPTO"). [Filing No. 1-1 at 16-17; Filing No 23 at 3.] The Trademark is registered in connection with various dietary supplements. [Filing No. 1-1 at 16.]

Mr. Williams and Mr. Bland operated Ocean's Promise during the spring and early summer of 2020, "securing additional customers and generating a significant growth in profits over this timeframe." [Filing No. 23 at 4.] However, by mid-July, Mr. Williams and Mr. Bland "began experiencing various disagreements relating to operating [Ocean's Promise]." [Filing No. 23 at 4.] "As an apparent result of the parties' internal disagreements, [Mr.] Bland took steps to unilaterally

---

Amended Complaint references the same "attached" exhibits as the original Complaint, including: (1) business entity details from the Indiana Secretary of State website; (2) trademark information from the United States Patent and Trademark Office website; (3) an amended shareholder agreement; (4) an approval of dissolution; and (5) a notice of dissolution. [*Compare* Filing No. 1-1 at 6-13 *with* Filing No. 23.] Where appropriate, the Court will consider the exhibits filed with the initial Complaint as though they were refiled with the Amended Complaint. *See*, *e.g.*, *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (stating that in ruling on a motion to dismiss under Rule 12(b)(6), a court may consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice").

3

block [Mr.] Williams' access from all [Ocean's Promise] retail and social media platforms, in addition to diverting [Ocean's Promise] funds to EBX." [Filing No. 23 at 4.]  In response to Mr. Bland's actions, Mr. Williams contacted a lawyer, who in turn contacted Mr. Bland's lawyer, and the parties and their counsel attempted to resolve their differences. [Filing No. 23 at 4.] However, no resolution could be reached, and Mr. Williams and Mr. Bland "ultimately agreed to dissolve [Ocean's Promise] and go their separate ways." [Filing No. 23 at 4.]

On August 31, 2020, following a special meeting of the shareholders, Mr. Williams and Mr. Bland executed a Shareholders' Resolution of Approval of Dissolution, formally authorizing the dissolution of Ocean's Promise. [Filing No. 1-1 at 31; Filing No. 23 at 4.] The same day, Ocean's Promise filed its voluntary notice of dissolution with the Indiana Secretary of State, and the dissolution became effective the following day, September 1, 2020. [Filing No. 1-1 at 32-34; Filing No. 23 at 5.]

Following the formal dissolution of Ocean's Promise, Mr. Williams and Mr. Bland began the winding down process. [Filing No. 23 at 5.] "To this end, [Mr.] Williams and [Mr.] Bland verbally agreed on the distribution of [Ocean's Promise's] assets and liabilities; however, they were unable to come to an agreement on the disposition of [the Trademark], which necessarily included the related websites and social media platforms which utilized [the Trademark] in selling the Sea Moss Products." [Filing No. 23 at 5.] Although no agreement had been reached concerning disposition of the Trademark, Mr. Bland continued to "wrongfully utilize" the Trademark "for the benefit of EBX and/or his own personal benefit." [Filing No. 23 at 5.] Mr. Bland also "took steps to further exert exclusive control over [the Trademark], including the retail websites and social media platforms, which resulted in [Mr.] Williams' inability to have visibility into and/or exercise his right to access [Ocean's Promise's] business information and related transactions during the

4

winding down process." [Filing No. 23 at 5.] In addition, "in furtherance of his scheme to defraud and deny [Mr.] Williams of his legal rights as a member of" Ocean's Promise, Mr. Bland "contacted the USPTO and fraudulently submitted documentation in an attempt to permanently change [Ocean's Promise's] address from its Indiana location to a location solely controlled and operated by [Mr.] Bland in Englewood Cliffs, New Jersey." [Filing No. 23 at 5.] Mr. Bland continues to carry on business using the Trademark and has "wrongfully taken steps to convert [the Trademark] for the benefit of EBX and/or his own personal benefit, thereby generating profits for himself, to the detriment of Ocean's Promise and [Mr.] Williams." [Filing No. 23 at 6.]

Mr. Williams "brings this action derivatively in the right of and for the benefit of Ocean's Promise," and asserts claims for: (1) breach of fiduciary duty; (2) self-dealing; (3) conversion; and (4) an equitable accounting. [Filing No. 23 at 6-11.] Regarding breach of fiduciary duty, Mr. Williams alleges that Mr. Bland and EBX have harmed and continue to harm Ocean's Promise by improperly profiting from the Trademark, thereby generating profits for EBX and Mr. Bland, to the detriment of Ocean's Promise and Mr. Williams. [Filing No. 23 at 6.] He further alleges that Mr. Bland breached his fiduciary duties "by, among other things, wrongfully transferring assets of Ocean's Promise to EBX and directing business opportunities of Ocean's Promise away from Ocean's Promise to EBX" and by "divert[ing] money and business from [Ocean's Promise] and us[ing] [Ocean's Promise's] assets for his own personal gain and benefit, as well as that of EBX." [Filing No. 23 at 6-7.]

In connection with his self-dealing claim, Mr. Williams alleges that Mr. Bland and EBX "have acted to put their personal interests ahead of the interests of Ocean's Promise's shareholders, including [Mr.] Williams." [Filing No. 23 at 8.] Mr. Williams alleges that Mr. Bland and EBX "are attempting to unfairly deprive [Mr. Williams and Ocean's Promise] of the value inherent in

5

and arising from" the Trademark and are "excluding [Mr. Williams and Ocean's Promise] from their fair share of profits derived from the wrongful and ongoing use" of the Trademark. [Filing No. 23 at 8.]

Regarding the conversion claim, Mr. Williams alleges that EBX and Mr. Bland "knew or should have known that they could not carry on any further business following the dissolution" of Ocean's Promise, and that they knew or should have known they could not exert unauthorized control over the Trademark because no agreement was reached concerning what was to happen to the Trademark after dissolution. [Filing No. 23 at 9.] According to Mr. Williams, he repeatedly informed EBX and Mr. Bland of their wrongful actions but was ignored, and EBX and Mr. Bland continued to exert unauthorized control over the Trademark for their own benefit without consent from Ocean's Promise or Mr. Williams. [Filing No. 23 at 9.]

Finally, Mr. Williams seeks an accounting of EBX's and Mr. Bland's income and expenses from August 2020 to the present day. [Filing No. 23 at 10-11.] Mr. Williams alleges that Mr. Bland's conversion of the Trademark has resulted in the substantial impairment of Ocean's Promise's value, "including the loss of significant potential member distributions derived from the unauthorized use of [the Trademark] following dissolution of [Ocean's Promise] in August 2020." [Filing No. 23 at 10-11.] Mr. Williams asserts that he is unable to determine the loss of value in light of Mr. Bland's exercise of exclusive control over the Trademark, "which necessarily includes the various online business platforms which utilize [the Trademark]." [Filing No. 23 at 11.]

Mr. Bland and EBX (collectively, "Defendants") have moved to dismiss all of Mr. Williams' claims. [Filing No. 27.] The motion is fully briefed and ripe for the Court's decision.

# III.
## DISCUSSION

Defendants assert that their Motion to Dismiss should be granted for three reasons: (1) Mr. Williams has not alleged a cognizable injury to Ocean's Promise or to himself; (2) Mr. Williams lacks standing to bring a derivative action because he is no longer a shareholder of Ocean's Promise;[2] and (3) Mr. Williams fails to allege that he made a pre-suit demand as required by Indiana law. [Filing No. 27.] The Court will address each of these arguments in turn.

### A. Whether Mr. Williams Alleges a Cognizable Injury

According to Defendants, "[t]he claims in the Amended Complaint are all premised on a single alleged injury—Defendants' alleged generation of profits through use of the Trademark following dissolution, to the alleged detriment of [Ocean's Promise]." [Filing No. 28 at 4.] However, Defendants argue, once Ocean's Promise was dissolved, it was no longer authorized to pursue business opportunities, and therefore Mr. Williams' "theory of harm fails as a matter of law." [Filing No. 28 at 5.] Defendants assert that the fundamental purpose of a derivative action like this one is to vindicate the rights of a corporation, and any resulting relief belongs to the corporation, but the relief sought in this action "is purported profits that [Ocean's Promise] could have never realized because they arose after [Ocean's Promise] was dissolved." [Filing No. 28 at 5.] In other words, Defendants contend, "[a] dissolved corporation cannot be harmed by the loss of a business opportunity that it was not permitted to pursue in the first instance," and this reality

---

[2] Standing is a threshold jurisdictional question that ordinarily must be addressed first. *See, e.g.*, *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 616 (7th Cir. 2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("Standing under Article III 'is a threshold question in every federal case....'") (alteration original). However, Defendants' argument that Mr. Williams fails to allege a cognizable injury also raises the issue of standing. *See Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019) (describing the injury-in-fact requirement as the "first and foremost" element of standing). Accordingly, the Court will address Defendants' arguments in the order they were raised.

"disposes of the theory of harm to [Ocean's Promise] that is common to all of [Mr. Williams'] claims." [Filing No. 28 at 5.] Defendants further argue that Mr. Williams has failed to allege any harm to himself distinct from the alleged harm to Ocean's Promise, and he as a shareholder also could not suffer any harm as a result of Defendants' use of the Trademark after dissolution deprived Ocean's Promise of the ability to pursue business opportunities in connection with the Trademark. [Filing No. 28 at 5-6.]

Mr. Williams responds that he has alleged cognizable injuries to both himself and to Ocean's Promise. [Filing No. 32 at 2-4.] Specifically, he maintains that in addition to his claims regarding Defendants' actions following dissolution of Ocean's Promise, he also alleges breach of fiduciary duty and self-dealing claims based on pre-dissolution conduct, including Defendants' transfer of assets to EBX, direction of business opportunities away from Ocean's Promise and to EBX, and Mr. Bland unilaterally blocking Mr. Williams' access to retail and social media platforms. [Filing No. 32 at 2-3.] Accordingly, he argues, Defendants are incorrect in their assertion that his claims are all based on a "single alleged injury." [Filing No. 32 at 3.] Mr. Williams argues that "[w]hile there can be no dispute that [Ocean's Promise] was not authorized to pursue business opportunities following dissolution, it is equally clear that both [Ocean's Promise] and [Mr.] Williams can (and indeed have) suffered harm by virtue of the Defendants' conversion and continued use of [the Trademark]." [Filing No. 32 at 3.] He contends that, under Indiana law, dissolution did not terminate Ocean's Promise's existence, nor did it terminate the shareholders' property rights in the Trademark, the title to which passed to the shareholders upon dissolution. [Filing No. 32 at 4 (citing *Levy v. Liebling*, 238 F.2d 505, 507 (7th Cir. 1956)).] Accordingly, he argues, both he and Ocean's Promise suffered harm as a result of Defendants' continued use of the Trademark. [Filing No. 32 at 4.]

In reply, Defendants argue that Mr. Williams' allegations concerning pre-dissolution conduct are insufficient to state a claim for relief that is plausible on its face. [Filing No. 37 at 5-6.] Defendants assert that Mr. Williams fails to allege details, such as when and how he was blocked from retail and social media platforms, what those platforms were, how he was damaged as a result of being blocked, what assets or funds were diverted to EBX, or when, how, or where such assets were diverted. [Filing No. 37 at 5-6.] Defendants also maintain that Mr. Williams cannot pursue claims to recover post-dissolution lost profits arising from use of the Trademark, because Ocean's Promise had no right or ability to pursue business opportunities related to the trademark after dissolution. [Filing No. 37 at 2-3.]

At the outset, the Court can easily dispose of Defendants' contention that the Amended Complaint alleges a single theory of harm concerning solely post-dissolution conduct. The Amended Complaint expressly alleges that, prior to dissolution of Ocean's Promise, Mr. Bland unilaterally blocked Mr. Williams' access to company retail and social media platforms and diverted company funds to EBX. [Filing No. 23 at 4.] Defendants argue that these allegations are too vague and conclusory to state a claim for relief, but the Court disagrees. Given the relatively short timeframe in which these actions are alleged to have occurred (between mid-July and early August 2020), the allegations are sufficient to give Defendants fair notice of the nature of the pre-dissolution claims and the grounds upon which they rest. *See Erickson*, 551 U.S. at 93.

As for the claims concerning post-dissolution conduct, Defendants argue only that Ocean's Promise could not have been harmed by Defendants' alleged improper use of the Trademark and diversion of business opportunities because Ocean's Promise could no longer use the Trademark or pursue business opportunities after it was dissolved. That argument misses the mark.

Under Indiana law, "[a] dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs." Ind. Code § 23-1-45-5(a). Accordingly, Defendants are correct—and Mr. Williams acknowledges—that Ocean's Promise could not pursue any new business opportunities once it was dissolved. However, that does not change the fact that Ocean's Promise retained ownership of the Trademark upon dissolution. *See* Ind. Code § 23-1-45-5(b)(1) ("Dissolution of a corporation does not . . . transfer title to the corporation's property . . . ."). Because Ocean's Promise owns the Trademark, any unauthorized use of the Trademark could potentially harm Ocean's Promise.

Furthermore, the allegations in the Amended Complaint, which the Court must accept as true, demonstrate that Ocean's Promise was still in the winding up process when the complained-of post-dissolution conduct took place. Specifically, Mr. Williams and Mr. Bland had not reached an agreement concerning disposition of the Trademark. To that end, Mr. Williams, as a shareholder, retained an interest in Ocean's Promise's remaining assets (*i.e*., the Trademark), until all of the company's property was liquidated or distributed. *See* Ind. Code § 23-1-45-5(a)(1)-(5) (listing examples of actions that are "appropriate to wind up and liquidate [a dissolved corporation's] business and affairs," including "disposing of its properties that will not be distributed in kind to its shareholders," and "distributing its remaining property among its shareholders according to their interests"). Any potential harm to or misappropriation of Ocean's Promise's assets could therefore harm Mr. Williams' interests.

Defendants point to no authority indicating that the fiduciary duties owed to a corporation by its directors—or the duties owed by one shareholder to another in a closely held corporation—end upon formal dissolution of the corporation, before winding up is complete. Existing caselaw suggests such is not the case. *See Melrose v. Capitol City Motor Lodge, Inc*., 705 N.E.2d 985,

10

989-94 (Ind. 1998) (considering whether a shareholder-director of a closely held corporation violated his fiduciary duties owed to the corporation and to fellow shareholders in a transaction that occurred during the winding up process, after the shareholders voted to liquidate the corporation).

In sum, Defendants ignore express allegations concerning pre-dissolution conduct, and their sole argument relating to post-dissolution claims assumes that once a corporation is formally dissolved, any interest the corporation or its shareholders had in corporate property immediately vanishes, and therefore neither the corporation nor the shareholders can be harmed by misappropriation or conversion of that property. That assumption is faulty. To the extent that Defendants argue that the Amended Complaint must be dismissed for failure to allege a cognizable injury, their motion is **DENIED**.

### B. Whether Mr. Williams has Standing as a Shareholder

Defendants argue that in order to have standing to pursue a derivative action, Mr. Williams must have been a shareholder of Ocean's Promise at the time of complained of action, but the allegations in the Amended Complaint demonstrate that Mr. Williams cannot meet that requirement. [Filing No. 28 at 6.] According to Defendants, Mr. Williams ceased to be a shareholder of Ocean's Promise and the Shareholder Agreement was terminated upon dissolution of the corporation, and all of the alleged misconduct occurred after Mr. Williams ceased to be a shareholder. [Filing No. 28 at 6-7.] Therefore, Defendants assert, he does not have standing to bring a shareholder derivative action. [Filing No. 28 at 7-8.] Defendants also argue that, to the extent Mr. Williams asserts any direct claims, those claims are also foreclosed by his "status as a non-shareholder following dissolution." [Filing No. 28 at 7.] Specifically, Defendants contend

that because a direct action is a lawsuit to enforce a shareholder's rights against a corporation, by definition a non-shareholder cannot maintain such an action. [Filing No. 28 at 7-8.]

In response, Mr. Williams argues that he has standing to pursue this action either derivatively or directly under the rule created in *Barth v. Barth*, 659 N.E.2d 559 (Ind. 1995). [Filing No. 32 at 4-6.] He asserts that because Ocean's Promise is a closely held corporation, Defendants owed him a fiduciary duty regardless of whether they were acting in their capacity as an officer or a shareholder. [Filing No. 32 at 5.] Mr. Williams argues that "each of the *Barth* factors and the relative interests involved supports [his] ability to proceed directly on his derivative claims against Defendants." [Filing No. 32 at 6.]

In reply, Defendants argue that Mr. Williams' contention that he can proceed directly under *Barth* "fails to address the actual reason [he] lacks standing to bring any claims, derivative or direct, to challenge post-dissolution misconduct," which is that pursuant to the Shareholder Agreement, Mr. Williams ceased being a shareholder upon the dissolution of Ocean's Promise. [Filing No. 37 at 4.] Defendants maintain that for both derivative and direct actions, Mr. Williams must have been a shareholder at the time of the complained-of conduct in order to have standing, and because he was not a shareholder post-dissolution, he lacks standing to pursue any of his claims. [Filing No. 37 at 4-5.]

Derivative actions are asserted by a shareholder on the corporation's behalf "to redress an injury sustained by, or enforce a duty owed to, a corporation." *G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 234 (Ind. 2001) (internal quotations and citation omitted). To bring a derivative action, a shareholder must satisfy four requirements: "(1) the complaint must be verified; (2) the plaintiff must have been a shareholder at the time of the transaction of which he complains; (3) the complaint must describe the efforts made by the plaintiff to obtain the requested action from the

board of directors; and (4) the plaintiff must fairly and adequately represent the interests of the shareholders." *Id.* A direct action, on the other hand, is a lawsuit "to enforce a shareholder's rights against a corporation," and may be brought in the name of a shareholder to redress any injury sustained by, or enforce a duty owed to, the shareholder. *Id.* (internal quotations and citations omitted).

"The distinction between direct and derivative actions has been complicated in more recent years by recognition in many jurisdictions, including Indiana, of direct actions by shareholders in close corporations for derivative claims." *Id.* at 236. In *Barth*, the Indiana Supreme Court "held that a shareholder in a close corporation need not always bring claims of corporate harm as derivative actions," and instead may pursue a direct action, because "in such an arrangement, the shareholders are more realistically viewed as partners, and the formalities of corporate litigation may be bypassed." *Id.* (discussing *Barth*, 659 N.E.2d at 561 & n. 6). Specifically, a shareholder of a close corporation may proceed against a fellow shareholder in a direct action so long as that form of action would not: (1) unfairly expose the corporation or the defendants to a multiplicity of actions; (2) materially prejudice the interests of creditors of the corporation; or (3) interfere with a fair distribution of the recovery among all interested persons. *G & N Aircraft*, 743 N.E.2d at 236 (citing *Barth*, 659 N.E.2d at 562).

At the outset, the Court observes that Defendants' argument is not that Mr. Williams is pursuing the wrong form of action (*i.e.*, direct versus derivative), but that Mr. Williams cannot pursue any action at all because he ceased to be a shareholder immediately upon formal dissolution of Ocean's Promise. Defendants have not cited any authority in support of their position, beyond general law establishing the requirements for derivative actions, and the Court's research has revealed no Indiana case addressing this precise issue. However, the Court finds that the decision

13

by the Indiana Court of Appeals in *Pfaffenberger v. Brooks*, 652 N.E.2d 884, 885 (Ind. Ct. App. 1995), is instructive, although that case addressed the direct-versus-derivative question not specifically at issue here.

Four members of the Pfaffenberger family were the sole shareholders of an Indiana corporation. *Id*. at 885. During the corporation's operation, a group of third-party individuals executed a promissory note to the corporation in connection with a construction project. *Id*. Sometime thereafter, the corporation was voluntarily dissolved. *Id*. During the wind-up process, the four Pfaffenberger family members filed a lawsuit in their individual capacities seeking to recover the total amount due on the promissory note. *Id*. at 885 & n.1. The defendants moved to dismiss the action, asserting that the Pfaffenbergers failed to name the corporation as the real party in interest. *Id*. at 885. The court disagreed, holding that: (1) the Pfaffenbergers could pursue a direct action in their own names under *Barth*; and (2) "had the Pfaffenbergers attempted to bring a derivative action, they could have easily satisfied the requirements for doing so." *Id*. at 886. The court refused to "exalt form over substance," and observed that because the corporation was in the process of winding up and would eventually be required to distribute the proceeds from the promissory note to the shareholders, "the Pfaffenbergers, *as shareholders*, would receive the proceeds from the note regardless of whether this action was brought by them individually or in the name of the corporation." *Id.* (emphasis added).

The *Pfaffenberger* court's discussion suggests that Mr. Williams could have brought his claims as either a direct or derivative action, and the Court sees no reason to revisit his decision to pursue a derivative action where it was permissible for him to do so.[3] But the *Pfaffenberger*

---

[3] Indeed, the concurring opinion in *Pfaffenberger* suggests that, of the two forms, a derivative action would be the most appropriate avenue where the asset in question belongs to the corporation, rather than the shareholders individually. *See Pfaffenberger*, 652 N.E.2d at 886-87 (Kirsch, J.,

14

decision is just as (and perhaps more) helpful for what it does not say. The opinion contains no discussion of the fact that the corporation had been dissolved prior to the Pfaffenbergers commencing their lawsuit, and explicitly referred to the Pfaffenbergers as shareholders, despite the fact that the corporation had already been dissolved. This suggests not only that the fact of dissolution was irrelevant to the Pfaffenbergers' ability to obtain relief, but also that their status as shareholders of the corporation continued at least until the winding up process was complete.

Setting aside *Pfaffenberger*, Defendants' position also fails as a matter of logic. Defendants essentially ask the Court to accept the proposition that shareholder status—including all shareholder rights and responsibilities—terminates immediately upon formal dissolution. That position is inconsistent with Indiana's Business Corporation Law, which expressly contemplates the existence of the corporation and of its shareholders post-dissolution.

"At common law, the corporate capacity to sue or be sued terminated when the corporation dissolved." *Indiana Nat. Bank v. Churchman*, 564 N.E.2d 340, 342 (Ind. Ct. App. 1990) (citation omitted). "Similarly, dissolution destroyed the capacity of former shareholders to sue or be sued with respect to rights entirely dependent upon and existing solely as an outgrowth of shareholder status." *Id.* However, the Indiana legislature has enacted several "survival statutes," which "operate[] to give life to a claim that would otherwise be extinguished by virtue of corporate dissolution." *Id.* at 342-43; *see also Blackford v. Welborn Clinic*, 172 N.E.3d 1219, 1228 (Ind. 2021) (recognizing that "Indiana's corporate 'survival' statutes," Ind. Code §§ 23-1-45-5 to -7, "extend the life of a dissolved business entity 'to wind up and liquidate its business and affairs' and to settle any claims filed against it within a two-year period"). Several provisions of § 23-1-45-5

---

concurring) (suggesting that, because dissolution of a corporation does not transfer title to property, the Pfaffenbergers would have to prove at trial that the promissory note was transferred from the corporation to themselves personally).

15

suggest that not only the corporation but also its shareholders continue to exist following dissolution. *E.g.*, Ind. Code § 23-1-45-5(a) (stating that "[a] dissolved corporation continues its corporate existence"); Ind. Code § 23-1-45-5(a)(4) (providing that a dissolved corporation may "distribut[e] its remaining property among *its shareholders* according to their interests" (emphasis added)); Ind. Code § 23-1-45-5(b)(5) (stating that dissolution of a corporation does not "prevent commencement of a proceeding by or against the corporation in its corporate name").

Taken together, all of the authority discussed above demonstrates that Ocean's Promise's and Mr. Williams' interests in corporate property survive dissolution, Mr. Williams' status as a shareholder survives dissolution at least for some limited purposes, and Mr. Williams' ability to vindicate his and the corporation's interests through a derivative action must also survive dissolution. To the extent that Defendants seek dismissal of this action based on lack of standing, their Motion to Dismiss is **DENIED**.

### C.  Whether Mr. Williams is Excepted from Indiana's Demand Requirement

Defendants argue that the Amended Complaint fails to allege that a pre-suit demand was made on the Ocean's Promise's Board of Directors or that no such demand was made because it would be futile. [Filing No. 28 at 9-10.] Defendants contend that Mr. Williams was required to plead one of these alternatives with particularity and this case should be dismissed because he failed to do so. [Filing No. 28 at 8-10.]

Mr. Williams responds that he was not required to make a pre-suit demand because it would have been futile given that he and Mr. Bland are the sole shareholders and directors of Ocean's Promise and Mr. Bland is being sued for acting pursuant to his own interests. [Filing No. 32 at 7-8.] Mr. Williams also argues that he is permitted to proceed with a direct action under *Barth*, and the *Barth* court expressly acknowledged that enforcing the demand requirement may not be

16

appropriate in a suit involving a closely held corporation with only two shareholders. [Filing No. 32 at 7 (citing *Barth*, 659 N.E.2d at 562).]

In reply, Defendants argue that regardless of whether Mr. Williams can properly pursue a direct action, he chose to bring a derivative action, and Indiana law requires that a plaintiff bringing a derivative action plead with particularity either that demand was made or that making a demand would be futile. [Filing No. 37 at 7.] According to Defendants, Mr. Williams did not do either of these things, and arguing that demand would be futile in response to a motion to dismiss does not satisfy the pleading requirement. [Filing No. 37 at 7-8.]

"Indiana law requires that potential derivative plaintiffs make a demand on the board of directors that it pursue the potential claims, unless the demand would be futile." *In re ITT Derivative Litig.*, 932 N.E.2d 664, 668 (Ind. 2010). "To excuse demand, a court must determine whether the particularized factual allegations create a reasonable doubt that the board could have properly exercised disinterested business judgment in responding to a demand." *Id*. *See also* Ind. Code § 23-1-32-2 ("A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made, if any, to obtain action by the board of directors and either that the demand was refused or ignored or why the shareholder did not make the demand."). "A director is 'interested' for demand futility purposes if a derivative claim poses a significant risk of personal liability for the director." *In re ITT Derivative Litig.*, 932 N.E.2d at 668. "To establish personal liability for a director, the plaintiff must plead particularized facts [showing] that the director engaged in 'willful or reckless misconduct.'" *Id*. at 669 (quoting Ind. Code § 23-1-35-1(e)(2)).

Indiana courts have repeatedly recognized that making a demand may be futile where the directors charged with handling the demand are acting in their own interests or would be

defendants in the potential litigation. *See In re Guidant Shareholders Derivative Litig.*, 841 N.E.2d 571, 573 (Ind. 2006) ("Indiana's early caselaw held that a demand on a board of directors to prosecute a lawsuit against themselves would be a useless one."); *G & N Aircraft, Inc.*, 743 N.E.2d at 236 ("[R]equiring a demand on the board and awarding the recovery to the corporation may not be appropriate in a close corporation where there are only two shareholders, and one owns a majority of the stock and controls the board."); *Wayne Pike Co. v. Hammons*, 27 N.E. 487, 489-90 (Ind. 1891) ("It would not be reasonable to require those who are charged with a conversion of the assets to bring suit in the name of the corporation against themselves[] . . . . Such a suit would be a farce, and it would be beyond reason to refuse the appellees relief because they did not demand that such a proceeding be had before they commenced this suit."); *Cole Real Est. Corp. v. Peoples Bank & Tr. Co.*, 310 N.E.2d 275, 278-79 (Ind. Ct. App. 1974) (explaining that a minority shareholder need not make a demand where the directors are acting in their own interests or where a majority shareholder is acting illegally or oppressively in the corporate name because "[e]quity does not require the doing of a useless act").[4]  In addition, the Indiana Supreme Court has not strictly applied the particularity requirement where futility was obvious. *See G & N Aircraft, Inc.*, 743 N.E.2d at 237 ("Generally, a conclusory allegation of futility of a demand is insufficient to satisfy [the particularity] requirement. Here, however, the majority shareholder and director is the

---

[4] The Indiana Supreme Court has recognized that a demand may not be futile "simply because the verified complaint names the members of the board, or because it alleges that members of the board are involved in wrongdoing, given that Ind. Code § 23-1-32-4(a) provides that "the board of directors may establish a committee consisting of three (3) or more disinterested directors or other disinterested persons" to determine whether it is in the best interests of the corporation to pursue a remedy." *In re Guidant Shareholders Derivative Litig.*, 841 N.E.2d at 576. Defendants have not raised this issue, and in any event, the Court concludes that requiring Mr. Williams to attempt to convince Mr. Bland to establish a committee would be unworkable for the same reasons that making a demand would be futile.

defendant. Under these circumstances, [plaintiff's] allegation [that a demand was useless] appears to be sufficient.").

Mr. Williams and EBX (acting through Mr. Bland) are the sole shareholders of Ocean's Promise, and Mr. Williams and Mr. Bland are the sole directors. Mr. Williams alleges that Mr. Bland's "actions were malicious and done for the sole purpose of converting funds from [Ocean's Promise] and its members," [Filing No. 23 at 7], and that Mr. Williams repeatedly complained to Mr. Bland but was ignored, and Mr. Bland knowingly continued taking unlawful actions, [Filing No. 23 at 9]. These allegations are sufficient to demonstrate that any attempt to make a demand would have been futile and create more than a reasonable doubt as to whether Mr. Bland could have properly exercised disinterested business judgment in responding to a demand. *See In re ITT Derivative Litig.*, 932 N.E.2d at 668. Accordingly, to the extent that Defendants seek dismissal based on failure to make a demand, their Motion to Dismiss is **DENIED**.

## IV.
### CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, [27], is **DENIED**.

Date: 10/4/2021

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**